MoIlvaine, J.
The defendants in error filed their petition in the Court of Common Pleas of Jackson county,., against the plaintiff in error, charging, in substance, that on the 12th of July, 1867, certain cattle of plaintiffs, without any fault on their part, went upon the track of defendant’s railroad, in said county, and were there, injured. *53 %y a passing train of ears. And charging further that the injury to their cattle was caused by the carelessness .•and negligence of the defendant in the management of ■the train, and also by reason of the want of fences, which -it was the duty of the defendant to construct and maintain upon both sides of its road, etc.
The defendant answered, in substance, that the plaintiffs’ cattle “ were running at large,” and being so at large, without the fault of the defendant, entered upon the field of one Beverly Keenan, through a breach in the fence, which would otherwise have inclosed said field. That the track of defendant’s road ran through this field, which was duly sprotected by sufficient cattle-guards at the boundaries "thereof, where said track crosses the same; that the said -cattle so being in said field without the fault and without the previous knowledge of the defendant or its agents, suddenly and unexpectedly went upon the track, and while attempting to escape from the field across the cattle-guard, which separated the field from a public highway, were injured.” The defendant also denied that it was guilty of carelessness in the running or management of the train.
A general demurrer to this answer was sustained, and judgment entered for plaintiffs.
The sustaining of this demurrer is now assigned for •error.
The plaintiffs below, by their demurrer, admitted the allegations of the answer to be true; and, for the purposes -of this case, the allegations of the petition, not controverted ",by the answer, must also be taken as true.
By applying these rules, we find the facts as admitted by the pleadings to be, that the plaintiffs’ cattle were running .-at large, without the omission on their part’of reasonable -care to prevent them from being at large; that while the •cattle were so at large, they entered the field of Keenan through a breach in the fence; that the breach in the fence -did not exist by reason of any fault on the part of the defendant ; that the railroad was not fenced otherwise than *54 by the fences which inclosed the field through which it ran that the cattle so being in the field, went upon the track of the road, without the knowledge of defendant, and were there injured by a passing train of cars; and that there was. no carelessness in the management of the train by which they were injured.
The first question to be considered is, Ho the facts as above stated negative the averment in the petition, that the plaintiffs’ cattle were injured by reason of the defendant’s-failure and neglect to fence its road ?
If the fences which inclosed Keenan’s field also inclosed the defendant’s road within the meaning and requirement of the act of March 25,1859 (S. & C. 831), the defendant was wholly without fault in the premises.
The first section of that act provides, “ that every railroads company . . . having the control or management of a railroad . . . -within this state, shall, and is hereby required, ... to construct and maintain good and sufficient fences on both sides of such road, . . . together with necessary cattle-guards, to prevent cattle and other animals from endangering themselves and the lives of passengers by getting upon such road; and such companj shall be liable for all damages which may result to horses, cattle, or other domestic animals, by reason of the want or insufficiency of such fences,” etc.
It is true, the exact location of the fences required to be constructed, is not prescribed by the act; and while it may be admitted that such fences may be located on the lands of adjoining proprietors, within any reasonable distance of the track, still, it is quite certain that the legislative intent was, that the railroad inclosures should be separate and distinct from the inclosures of adjoining proprietors. The same section provides, “ that whenéver such railroad shall pass through . . . any inclosed field, . . . the proprietor of such inclosed field ... is hereby required to construct one-half the fence necessary to partition such inclosed field from the railroad.” The second section provides, that where fences, built by a railroad company aa *55 required by the act, shall form, in whole or in part, the inclosure to adjacent lands, the proprietor of such lands shall, if he has received compensation for the right of way, “ pay to the company one-half the value of so much of such fence as serves as a partition fence;” and where adjacent lands have been inclosed by the owner in' such manner that the inclosing, fence, in whole or in part, may be made to answer the purpose of inclosing the railroad, the company may join its fence thereto, upon payment of one-half the value of so much of the fence “ as serves to inclose the railroad;” and section three provides, such fences, when made, shall be kept in repair, as partition fences are required by law to be kept in repair.
These provisions, considered in connection with the declared object of the legislature, to wit, “to prevent cattle and other animals from endangering themselves and the lives of passengers by getting upon such, railroad,” clearly show that the legislature intended that railroads should be separately inclosed ; and hence the maintenance of fences which inclose railroads and adjacent lands in a common close, to be used in common by railroad companies and adjoining proprietors, is not a compliance with the requirements of the statute as it stood before the amendment of April 26, 1871.
It is claimed, however, that the obligation which thus appears to have been imposed upon railroad companies by the first section, is modified by the provision of the fourth section of the act: “ That nothing contained in this act shall be held to afiect, in any manner, any contract or agreement between any railroad company, . . . and the proprietor or occupiers of land adjoining, for the construction and maintenance of fences, etc.”
Eull effect may be given to such contract, and yet, if it does not provide for the construction and maintenance of such fences as are required by the first section of the act, the duty imposed by that section must nevertheless be performed. Such contract, if it be to the effect' that the railroad shall not be inclosed at all, can not relieve the com *56 pany from the duty of constructing and maintaining good and sufficient fences on both sides of its road; nor will any contract, for the construction and maintenance of fences other than such as are required by the statute, have that effect.
Such being the true meaning of the act of 1859, there is no sufficient denial in the answer of the averment in the petition, that the plaintiffs’ cattle were injured by reason of the failure of the defendant to fence its road.
This bi’ings us to the question, whether the answer shows that the plaintiffs’ fault contributed to their own injury; in this, that their cattle, while running at large, entered the inclosure of Keenan, and thence went upon the track whereby they were injured.
This question divides itself into two propostions: i. Is the running at large of cattle, per se, a fault on the part of the owner under the act of April 13, 1865 (8. & S. 7) ? 2. Were the plaintiffs at fault under the act of April 7, 1865 (S. & S. 373), by reason of their cattle, while running at large, entering the field of Keenan through a breach in the fence, and thence going upon the railroad ?
1. In Pittsburg, Ft. Wayne and Chicago R. W. Co. v. Methven, 21 Ohio St. 586, it was held, that the owner of a cow, who knowingly, willfully, and unlawfully permitted her to run at large upon the highways and uninclosed lands adjacent to a railroad, whereby she went upon the track and was accidentally killed, could not, by reason of contributory negligence, recover from the company, whose negligence, in not fencing its road, also contributed to the injury. This case differs from that, in the fact that here the plaintiffs’ cattle were at large without the omission on their part of reasonable care to prevent them from running at large.
The rule of the common law, which requires owners of domestic animals to restrain them upon their own premises, has never been recognized as the law of this state, except only where such animals are habitually breachy or unruly. 3 Ohio St. 172; 4 Ib. 474. The owners, however, of certain animals were made liable by statute, for damages done by *57 .-such, animals breaking into the inclosed lands of others, provided such lands were inclosed by such fences as a good husbandman ought to keep. Statute of January 17, 1840, S. & C. 649. Such was the state of our law when the act -of 1859, requiring railroads to be inclosed, was passed. Whether railroad inclosures constructed under the requirements of the act of 1859 were protected by the act of 1840, •qucere? But, however that may be, the act of April 7,1865, repealed the act of 1840, and provided that the owners of -certain animals (including cattle) running at large, should be liable for all damages occasioned by such animals breaking or entering any inclosure, other than inclosures of rail•roads. After the passage of this act, owners of cattle were without fault, when their cattle running at large, with or without their knowledge or permission, broke or entered the inclosures of railroads, though they were thereby made liable for all damages occasioned by their breaking or -entering other inclosures.
Then followed the act of April 13, 1865, which, without ■repealing the act of the 7th of same month, declared :(section 1), “ that it shall be unlawful for any person or persons, being the owner or having the charge of any . . . cattle, ... to suffer the same to run at large in any public road or highway, or in any lane, street, or alley, or upon uninclosed land in the State of Ohio,” and provided fines and penalties for the violation of the act. The phrase, “ suffer the same to run at large,” used in the act, is one of doubtful import. The doubt is whether it was the intent of the legislature to impose upon the owner the risk of preventing his cattle from running at large, or •only the duty of using reasonable care and precaution to prevent them from running at large.
Whichever construction shall be placed upon the statute, it is quite clear that the owner is at fault, whenever the ■duty, whatever it may be, which the statute imposes, has been violated, and until then he is without fault in the premises.
Section 2 of the act authorizes county commissioners to *58 grant general permission for the running at large of the, animals, named within the limits of their county; and if such general permission be not granted, township trustees are authorized to give special permits to individuals. Section 3 provides the mode of prosecuting for the penalties named,, and section 4 provides that “it shall be a sufficient defense to such prosecution to show that such animal was at large without the knowledge of the owner or keeper and without fault of his.” Now, if the failure of the owner to prevent his animals from running at large, is the thing declared to be unlawful, then such failure must be a fault, a penal fault, under this statute; and if the fact that such animals were running at large be admitted, how is it possible to show that the owner is without fault in the premises?
Taking the whole statute together, a majority of the court think, that “to suffer such animals to run at large,” involves the element of willfulness or carelessness on the part of the owner, and that it was not intended to impose upon him anything more than the duty to use reasonable care and precaution in restraining his animals upon his own premises. In prosecutions for the penalties imposed by the act, proof that the animal was running at large, is prima fade evidence of the owner’s guilt, but may be overcome by showing that the owner was not guilty of willfully or carelessly permitting it to run at large.
2. Admitting the correctness of this construction of the act of April 13th, the plaintiff in error claims that under the act of April 7, 1865, above inferred to, the plaintiffs below were guilty of a fault which contributed to the injury complained, in this, that their cattle, while.running at large, entered the inclosure of Keenan, and, while trespassing there, went upon the railroad where they were injured.
It is true, that this statute makes the owner of cattle liable for all damages occasioned by them upon any inclosure, other than inclosures of railroads, into which they may break or enter while running at large; and this, too, without reference to the fact whether they were at large, with or without the fault of the owner. It is not true, *59 however, that this statute imposed upon the owner any duty or care in restraining his cattle upon his own premises. Notwithstanding its provisions, the owner-had lawful right to permit his cattle to run at large upon uninclosed lands, and whatever may have been the risks assumed by such owner as to injuries received by them while running at large upon uninclosed land, or upon inclosures other than ' railroad inelosures, into which they might break or enter, it is quite clear to my mind that he assumed no risk on account of the negligence of railroad companies, either in the management of their trains or in the fencing of their roads. This enactment imposed upon the owners of cattle the liability for damages occasioned by them upon inclosures, not because such owners were guilty of any fault in permitting their cattle to run at large, but because the owner or occupier of such inclosures being also without fault, and having voluntarily taken the precaution for his own protection to inclose his'premises, it would be unjust that he should bear the loss. It is a case where one of two innocent persons must suffer loss, and it was deemed the better policy to impose it upon the owners of the animals, who had incurred no expense in order to prevent the loss. This policy was not, however, extended to cases where damage was done upon the inclosures of railroads, although railroad companies were bound to fence against the intrusion of animals, and were made liable for all injuries done to them by reason of the want or insufficiency of such fences.
This view results in the affirmance of the judgment, unless the defendant below had a right to rely upon Keenan’s fences as constituting an inclosure of its road as required by the original act of March 25, 1859, which we have already shown it could not do, or, unless it be held that the obligation imposed by that act was intended only for the protection and indemnity of the proprietors of adjacent lands. "Whatever maybe the construction of similar statutes by the courts of other states where the rule of the English common law prevails, requiring the owners of *60 •domestic animals to restrain them upon their own premises, we think that in this state where, by usage and custom, a common right to suffer domestic animals to run at large • obtained, it must be held that the obligation to fence was imposed upon railroad companies for the indemnity of all persons whose animals might be injured while running at large. Since the passage of the act of April 13, 1865, however, the benefit of such indemnity can be claimed ■only by persons whose animals may be at large without the knowledge of the owners, and without their fault.

Judgment affirmed.

Day, C. J., Welch and White, JJ., concurring; Stone, .J., dissented from the fourth proposition of the syllabus.